**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 26-08483 |
| | ) | |
| TRANS EXPRESS LINES, INC. | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

---

# PLAN OF REORGANIZATION
# FILED BY TRANS EXPRESS LINES, INC.

**Dated: September 14, 2026**

---

Miriam Stein Granek
Gutnicki, LLP
4711 Golf Road
Suite 200
Skokie, IL 60076
847-745-6592
Email: mgranek@gutnicki.com

David Freydin
Law Offices of David Freydin
8707 Skokie Blvd. Suite 312
Skokie, IL 60077
David.freydin@freydinlaw.com

*Attorneys for Debtor and Debtor in Possession*

# PLAN OF REORGANIZATION
# FILED BY TRANS EXPRESS LINES, INC.

Trans Express Lines, Inc., Debtor and Debtor In Possession herein ("Debtor"), hereby proposes its Plan of Reorganization (the "Plan" or "Plan of Reorganization"), pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code").

## SUMMARY

Through its Plan, the Debtor proposes to pay its creditors from cash derived from its operational income. Commencing on the Effective Date of the Plan, which date shall be the first date of the month thirty (30) days following the date when the Order confirming the Debtor's Plan is final (or such earlier date after the Order confirming the Plan is final, in the Debtor's discretion), the Debtor anticipates disbursing payments to its creditors, as follows:

| Category | Allowed Claims | Plan Treatment |
|---|---|---|
| **Administrative Priority Fee Claims** | $80,000.00 estimated | Administrative Priority Fee Claims of the Debtor's retained professionals which include Law Offices of David Freydin Ltd. (bankruptcy counsel) and Gutnicki LLP (co-bankruptcy counsel) shall be paid on the later of (i) the Effective Date or (ii) approval and allowance of interim and final compensation by the Bankruptcy Court, or (iii) on such other terms as agreed upon between the Debtor and the claimant asserting the Priority Fee Claim. |
| **Administrative U.S. Trustee Claims** | $50,000 (UST Fees) | Other Administrative Priority Claims of the United States Trustee shall be paid in full on the Effective Date or as soon as practical thereafter. |
| **Priority Tax Claims** | Claim Amount: $224,848.80 (IRS) | Priority Tax Claims shall be paid in full over a period of 60 months from the Petition Date plus interest at 7% per annum in equal monthly payments. Estimated monthly payments to the IRS are $4,452.28 per month. |
| **Class 1(a) – Allowed Secured Claim of Atlantic Union** | Claim Amount: $688,325.00[1] | Atlantic Union Equipment Finance ("Atlantic") is owed $688,325.00 from the Debtor which is fully secured (the |

[1] Atlantic Union Equipment Finance filed a claim in the amount of $724,234.85. However, the claim amount does not reflect all of the payments made by the Debtor. The correct claim amount for Atlantic Union is $688,325.00.

| | | |
|---|---|---|
| **Equipment Finance** | Secured Claim: $688,325.00 | "Allowed Atlantic Secured Claim"). The Debtor shall pay the Allowed Atlantic Secured Claim, less adequate protection payments already paid, over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(a) are $13,874.54 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 1(b) – Allowed Secured Claim of BMO Bank NA** | Claim Amount: $360,590.09<br><br>Secured Claim: $360,590.09 | BMO bank N.A. ("BMO") filed a claim in the amount of $360,590.09 which is fully secured (the "Allowed BMO Secured Claim"). The Debtor shall pay the Allowed BMO Secured Claim, less adequate protection payments already paid, over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(b) are $7,268.40 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 1(c) – Allowed Secured Claim of Bank Midwest, a Division of NBH Bank** | Claim Amount: $811,824.41<br><br>Secured Claim: $811,824.41 | Bank Midwest, a division of NBH Bank ("Bank Midwest") filed a claim in the amount of $811,824.41 which is fully secured (the "Allowed Bank Midwest Secured Claim"). The Debtor shall pay the Allowed Bank Midwest Secured Claim, less adequate protection payments already paid, over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(c) are $16,363.91 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 1(d) – Allowed Secured Claim of Bank of America N.A.** | Claim Amount: $229,122.74<br><br>Allowed Secured Claim: $229,122.74 | Bank of America NA ("Bank of America") filed a claim in the amount of $229,122.74 which is fully secured (the "Allowed Bank of America Secured Claim"). The Debtor shall pay the Allowed Bank of America Secured Claim, less adequate protection payments already paid, over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(a) are $4,618.42 per month. Adequate |

| | | |
|---|---|---|
| | | protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 1(e) – Allowed Secured Claim of Daimler Truck Financial Services USA LLC** | Claim Amount: $4,654,665.29[2]<br><br>Secured Claim: $4,654,665.29 | Daimler Truck Financial Services USA LLC ("DTFS") filed a claim for $5,668,461.53, of which $4,654,665.29 is owed by the Debtor for loans made by DTFS to the Debtor. The remaining amounts asserted by DTFS are for loans to related entities which were guaranteed by the Debtor. The Debtor maintains the value of Class 1(e)'s collateral is $4,654,665.29. The Debtor shall pay this amount (the "Allowed Daimler Secured Claim") over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(e) are $93,823.90 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(e) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(f) – Allowed Secured Claim of DeLage Landen Financial Services, Inc.** | Claim Amount: $1,159,014.41<br><br>Secured Claim: $1,024,098.00 | DeLage Landen Financial Services, Inc. ("DLL") filed a claim in the amount of $1,159,014.41 (the "DLL Claim") of which Claim, $1,024,098 is asserted as the secured value (the "Allowed DLL Secured Claim"). The Debtor shall pay the Allowed DLL Secured Claim over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(f) are $20,642.70 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(f) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(g) - Allowed Secured Claim of First Business Specialty Finance LLC** | Claim Amount: $4,391.76 (scheduled)<br><br>Secured Claim: | First Business Specialty Financial ("First Business") is owed approximately $4,391.76 and is fully secured (the "Allowed First Business Secured Claim"). The Debtor shall pay the Allowed First |

[2] Daimler Truck Financial Services LLC asserts in its Claim No. 13 that $4,654,665.29 is owed from loans made by DTFS to the Debtor. The remaining amount of the DTFS claim relates to loans by related entities which were guaranteed by the Debtor.

| | | |
|---|---|---|
| | $4,391.76 | Business Secured Claim in full over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(g) are $88.52. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 1(h) – Allowed Secured Claim of Horizon Bank** | Claim Amount: $404,759.12<br><br>Secured Claim: $320,000[3] | The Debtor maintains the value of Class 1(h)'s collateral is $320,000. The Debtor shall pay this amount (the "Allowed Horizon Bank Secured Claim") over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(h) are $6,450.23 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(h) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(i) – Allowed Secured Claim of M&K National Lease** | Est. Claim Amount: $693,091.02 (scheduled)<br><br>Secured Claim: $620,000.00 | The Debtor maintains the value of Class 1(i)'s collateral is $620,000. The Debtor shall pay this amount (the "Allowed M&K Secured Claim") over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(i) are $12,497.32 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(i) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(j) – Allowed Secured Claim of Mitsubishi HC Capital America, Inc.** | Claim Amount: $342,071.39<br><br>Secured Claim: $325,000.00 | The Debtor and Mitsubishi HC Capital America, Inc. ("Mitsubishi") agree that the value of Mitsubishi's collateral is $325,000 (the "Allowed Mitsubishi Secured Claim"). The Debtor shall pay the Allowed Mitsubishi Secured Claim over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(j) are $6,551.01 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the |

[3] Horizon Bank asserts that its Claim Nos. 4, 5 and 6 in the aggregate of $404,759.12 are fully secured. The Debtor disputes this valuation and maintains that the value of the Horizon Bank collateral in the aggregate is $320,000.

| | | |
|---|---|---|
| | | amount due to Class 1(j) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(k) – Allowed Secured Claim of Pathward NA** | Claim Amount: $1,542,367.74[4]<br><br>Secured Claim: $1,030,000.00 | Pathward NA asserts the value of its collateral is $1,030,000.00 (the "Allowed Pathward Secured Claim"). The Debtor shall pay the Allowed Pathward Secured Claim in full over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(k) are $20,156.96 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(k) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(l) – Allowed Secured Claim of PNC Bank** | Claim Amount: $1,668,593.04[5]<br><br>Allowed Secured Claim: $1,400,000.00[6] | The Debtor maintains the value of Class 1(m)'s collateral is $1,400,000. The Debtor shall pay this amount (the "Allowed PNC Secured Claim"), less adequate protection payments already paid, over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(l) are $28,219.74 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(l) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(m) - Allowed Secured Claim of Siemens Financial Services, Inc.** | Claim Amount: $421,687.84<br><br>Allowed Secured Claim: $300,000.00 | The Debtor and Siemens Financial Services, Inc. ("Siemens") agree that the value of Siemen's collateral is $300,000 (the "Allowed Siemens Secured Claim"). The Debtor shall pay the Allowed Siemens Secured Claim over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(m) are $6,047.09 per month. Adequate protection payments made to |

[4] Pathward filed a claim for $1,542,367.74. However, the Debtor's books and records show that the total amount due to Pathward is $1,521,774.67.
[5] PNC Bank filed several claims for $1,745,009.32 in the aggregate. The Debtor maintains that the total amount due to PNC Bank is $1,668,593.04.
[6] PNC Bank asserts in its Claim Nos. 16, 17, 28, 19, 20, 21 and 22 that the aggregate value of its collateral is $1,468,839.52. The Debtor disputes this value and maintains the value of the collateral is $1,400,000.

| | | |
|---|---|---|
| | | creditor will reduce the total Allowed Secured Claim. The remainder of the amount due to Class 1(m) shall be treated and paid as a Class 2 general unsecured claim. |
| **Class 1(n) - Allowed Secured Claim of Transportation Alliance Bank** | Claim Amount: $105,060.29<br><br>Allowed Secured Claim: $105,060.29 | Transportation Alliance Bank ("TAB") asserts that its claim No. 28 in the amount of $105,060.29 is fully secured (the "Allowed TAB Secured Claim"). The Debtor shall pay the Allowed TAB Secured Claim in full over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(n) are $2,117.70 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 1(o) – Allowed Secured Claim of Volvo Financial Services** | Claim Amount: $313,455.24<br><br>Allowed Secured Claim: $313,455.24 | Volvo Financial Services ("VFS") asserts that its claim No. 7 in the amount of $313,455.24 is fully secured (the "Allowed VFS Secured Claim"). The Debtor shall pay the Allowed VFS Secured Claim in full over a period of 60 months plus 7.75% interest per annum. Estimated monthly payments to Class 1(o) are $6,318.30 per month. Adequate protection payments made to creditor will reduce the total Allowed Secured Claim. |
| **Class 2 – General Non-Priority Unsecured Claims** | Estimated: $5.3 Million | Class 2 Claims including unsecured deficiency claims shall be paid pro rata distributions of deferred cash payments aggregating $110,000 from (i) the General Unsecured Creditor Fund in the amount of $100,000; and (ii) $10,000 from New Value Contribution, payable in five (5) equal payments of $22,000 with the first installment one (1) year following the Effective Date and $22,000 payable annually on that date for 4 more payments.<br><br>Class 2 Claims are impaired under the Plan. |
| **Class 3 – Equity Interests** | Interests of Equity Holders | All equity interests shall be deemed to be terminated and canceled upon the Effective Date. Equity interests in the Reorganized Debtor shall be issued 100% |

| | | |
|---|---|---|
| | | to Svetlana Randle, as 100% owner and President of the Reorganized Debtor as of the Effective Date. Ms. Randle shall contribute new value to the Reorganized Debtor in the amount of $10,000, payable on the Effective Date which shall be added to the General Unsecured Creditor Fund to be distributed to Class 2 general unsecured claims. Class 3 Claims and Equity interests are impaired under the Plan. The new value provided herein is subject to higher and better offers as detailed below in Section IV of the Plan. |

## PREAMBLE

On May 15, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The Debtor has continued in possession of its property and has operated its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed in this case.

The Debtor's Plan provides for distribution to holders of allowed claims and interests through continued operations of the Debtor's business and generated income over time.

A summary of distributions to be made under the Plan is set forth above. A more detailed and complete discussion of the method of implementation of the Plan is set forth herein and in the Disclosure Statement which is being filed concurrently with this Plan.

## ARTICLE I
## DEFINED TERMS
## RULES OF CONSTRUCTION AND INTERPRETATION

Defined Terms: As used herein, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rule of Bankruptcy Procedure, will have the meaning ascribed thereto in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, as applicable.

"**Administrative Claims**" means Administrative Priority Fee Claims and Other Administrative Priority Claims as defined herein.

"**Other Administrative Priority Claims**" means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§503(b), 507(b) or, if applicable, §1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor (such as wages and salaries) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating

to tax periods, or portions thereof, ending on or before the Petition Date); and (b) all fees and charges assessed against the Debtor' Estate under §1930, chapter 123 of title 28, United States Code.

"**Administrative Priority Fee Claims**" means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§503(b), 507(b) or, if applicable, §1114(e)(2) of the Bankruptcy Code, including: (a) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under §§330, 331 or 503(b) of the Bankruptcy Code (also defined herein as "Fee Claims").

"**Allowed**" means an Allowed Claim or Interest in a particular Class or category specified. Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

"**Allowed Claim**" means a Claim: (a) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor; or, (iii) pursuant to the terms of this Plan.

For purposes of computing distributions under this Plan, the term "Allowed Claim" shall not include interest on such Claim from and after the Petition Date, except as provided in §506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

"**Assets**" mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof existing as of the Effective Date.

"**Available Cash**" means the aggregate of all Cash held by the Debtor.

"**Avoidance Actions**" means all Debtor's claims, demands and causes of action arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law.

"**Bankruptcy Case**" means this case entitled Trans Express Lines, Inc., pending before the United States Bankruptcy Court for the Northern District of Illinois as Case No. 26-08483.

"**Bankruptcy Code**" means Title 11 of the United States Code, as now in effect or hereafter.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Illinois having jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter.

"**Business Day**" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Cash**" means legal tender of the United States of America and equivalents thereof.

“**Causes of Action**” means all Avoidance Actions, all objections to Claims, and any other Litigation Claims.

“**Claim**” means a "claim" as defined in §101(5) of the Bankruptcy Code.

“**Claims Bar Date**” means, the last day for Claims or Interests which date is August 7, 2026 as to all claims held by non-governmental creditors.

“**Class**” means a category of holders of Claims or Interests, as described in Article II hereof.

“**Confirmation Date**” means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

“**Confirmation Hearing**” means the hearing held by the Bankruptcy Court pursuant to §1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

“**Confirmation Order**” means the order of the Bankruptcy Court, confirming this Plan pursuant to §1129 of the Bankruptcy Code.

“**Debtor**” means Trans Express Lines, Inc.

“**DIP**” means Debtor in Possession.

“**Disbursing Agent**” means Svetlana Randle, President of the Debtor who shall serve as the Disbursing Agent for all payments under the Plan.

“**Disclosure Statement**” means that certain disclosure statement, including all exhibits and schedules thereto, as or supplemented from time to time, relating to this Plan as approved by order of the Bankruptcy Court.

“**Disposition**” (or “**Dispose**”), means the sale, transfer or other disposition of an Asset such that the entire value of the Asset is received in the form of Cash proceeds unless, the Debtor consent to another form of disposition.

“**Disputed Claim**” means any Claim as to which the Debtor have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

“**Disputed Claim Amount**” means (a) with respect to contingent or unliquidated Claims, the amount estimated by the Bankruptcy Court for purposes of distributions in respect of such Claim in accordance with §502(c) of the Bankruptcy Code; or (b) the amount set forth in a timely filed proof of claim.

“**Distribution(s)**” mean any payment(s) of Cash that this Plan requires to be made to Holders of Allowed Claims.

"**Distribution Date**" means initially, the date that is one year from the Effective Date of the Plan and payable on that date of each year thereafter for 4 additional years.

"**Effective Date**" means that 1st day of the month following the date thirty (30) days after the Confirmation Order becomes a final and non-appealable Order, or such earlier date following the entry of the Confirmation Order in the Debtor's sole discretion.

"**Estate**" means all property and rights of whatever kind held by the Debtor or Debtor in Possession created under §541 of the Bankruptcy Code.

"**Fee Claims**" means an Administrative Claim arising or asserted under §§330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case on or prior to the Effective Date.

"**File**" "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"**General Unsecured Creditors Fund**" or "**GUC**F" means the fund from which pro-rata distributions of deferred cash payments will be disbursed to allowed general unsecured non-priority claims.

"**Holder**" means an entity holding a Claim or Interest.

"**Impaired**" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of §1124 of the Bankruptcy Code.

"**Litigation Claims**" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or Estate may hold against any person or entity under the Bankruptcy Code or any non-bankruptcy law, including without limitation those Litigation Claims described in the Disclosure Statement, Avoidance Actions and other undetermined claims and rights of action.

"**New Value Contribution**" means the funds to be paid by the principal in the amount of $10,000 payable on the Effective Date in payment of equity security interests in the Reorganized

Debtor. The New Value Contribution is to be paid into the General Unsecured Creditor Fund. The New Value Contribution is subject to higher or better offers as detailed below.

"**Order For Relief**" means May 15, 2026, the date on which the Order For Relief was entered.

"**Petition Date**" means May 15, 2026, the date on which the Petition was filed by the Debtor commencing the Bankruptcy Case.

"**Plan**" means this plan of reorganization and all supplements, appendices and schedules hereto, in its present form or as the same may be altered, amended or modified from time to time.

"**Priority Claims**" means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

"**Priority Tax Claims**" means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a)(8).

"**Professional**" or "**Retained Professional**" means any (a) professional employed in the Chapter 11 case pursuant to §§327 or 1103 of the Bankruptcy Code or otherwise and (b) other professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 case pursuant to §503(b)(4) of the Bankruptcy Code.

"**Pro Rata Share**" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in the Class to which such Allowed Claim belongs that are not claims which have been disallowed by final order of the Bankruptcy Court or by agreement.

"**Unimpaired Claim**" means a claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

"**Unsecured Claim**" means a general unsecured, non-priority claim.

"**Rules of Interpretation**" and "**Computation of Time**" for purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in §1021, of the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a), will apply.

Unless otherwise specified all other terms shall be deemed as defined in 11 U.S.C. §101, if applicable.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Debtor In Possession Operating Expenses and Claims, Administrative Claims, Priority Claims, Priority Tax Claims, and Executory Contracts and Unexpired Lease Claims are placed in the Classes set forth below. In accordance with §1123(a)(1), of the Bankruptcy Code, Debtor In Possession Operating Expenses and Claims, Administrative Claims, Priority Claims, Priority Tax Claims, and Executory Contracts and Unexpired Lease Claims as described below, have not been classified.

A Claim or Interest is placed in a Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.1 Unclassified Claims (Not Entitled to Vote on the Plan)

2.1.1. Debtor in Possession Operating Expenses and Claims. These claims consist of the post-petition expenses, obligations and claims incurred and paid in the ordinary course of the Debtor's business and financial affairs.

2.1.2 Administrative Claims. Administrative Claims consist of Priority Fee Claims of the Debtor's professionals including the administrative claims of attorneys Gutnicki LLP and the Law Offices of David Freydin Ltd.; and the quarterly statutory fees owed to the United States Trustee.

2.1.3 Priority Tax Claims. Priority Tax Claims entitled to priority pursuant to Section 507(a)(8) for pre-petition priority taxes.

2.1.4 Priority Employee Claims. Priority Employee Claims entitled to priority pursuant to Section 507(a)(7) consist of the allowed claims of employees of the Debtor up to a maximum of $15,150. The Debtor is not aware of any Priority Employee Claims.

2.2 **Impaired Classes of Claims** (Entitled to Vote on the Plan)

2.2.1 Class 1 – Class 1 consists of the Allowed Secured Claims of the following creditors:

(a) Class 1(a) – Atlantic Union Equipment
(b) Class 1(b) – BMO Bank NA
(c) Class 1(c) - Bank Midwest a division of NBH Bank
(d) Class 1(d) – Bank of America NA
(e) Class 1(e) – Daimler Truck Services USA LLC
(f) Class 1(f) – DeLage Landen Financial Services, Inc.

(g) Class 1(g) - First Business Specialty
(h) Class 1(h) – Horizon Bank
(i) Class 1(i) – M&K National Lease
(j) Class 1(j) – Mitsubishi Capital America, Inc.
(k) Class 1(k) – Pathward NA
(l) Class 1(l) – PNC Bank
(m) Class 1(m) – Siemens Financial Services, Inc.
(n) Class 1(n) – Transportation Alliance Bank
(o) Class 1(o) – Volvo Financial Services

2.2.2 Class 2 - General Unsecured Non-Priority Claims.

Class 2 claims consist of the allowed claims which are General Non-Priority Unsecured Claims, and include the general non-priority unsecured deficiency claims of the Class 1 creditors. Class 2 claims aggregate approximately $5.3 Million.

2.3 **Impaired Class of Interests** (Not Entitled to Vote on the Plan)

Class 3 – Equity Interests. Class 5 consists of all Equity Security Interests in the Debtor which includes the 100% ownership interest of Svetlana Randle.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

3.1 Unclassified Claims (Not Entitled to Vote on the Plan)

3.1.1 Debtor In Possession Operating Expenses and Claims – The Debtor continues to pay all Debtor In Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of its creditors. No Debtor In Possession operating costs, expenses, obligations or claims will remain unpaid at the Effective Date of the Plan, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's business affairs and operations, and unless the Debtor and such creditor agree on different payment terms. Any unknown operating costs, expenses or obligations shall be paid on the Effective Date of the Plan to the extent that they are known prior thereto and are due pursuant to the established credit terms, or they shall be paid as they become known and due.

3.1.2 Other Administrative Priority Claims and Administrative Fee Claims –

Other Administrative Priority Claims consisting of statutory fees owed to the United States Trustee and estimated to be in the amount of $50,000 shall be paid, in full, on Effective Date or as soon as practical thereafter, and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed.

Administrative Priority Fee Claims shall be paid, in full, in cash, on the later of (1) the Effective Date or as soon as practical thereafter, (2) upon approval by the Bankruptcy Court of such Administrative Claims and Fee Claims, or (3) on such other terms as agreed upon between the Debtor and the party asserting the Administrative Claim. These claims consist of the Administrative Claims of the attorneys of Miriam Stein Granek of Gutnicki LLP and David Freydin of The Law Offices of David Freydin Ltd. The Administrative Claims of Professionals are to be in the aggregate amount of $50,000 to $70,000.

To the extent that there are other Allowed Administrative Priority Claims, they shall be paid, in full, by the Debtor on the Effective Date or as soon as practicable thereafter.

3.1.3 Priority Tax Claims

Priority Tax Claims entitled to priority pursuant to §507(a)(8) shall be paid, in full, on the Effective Date or as soon as practical thereafter. If not paid on the Effective Date Priority Tax Claims shall be paid with interest at the rate of seven percent (7%) per annum in equal monthly installments of principal and interest, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter until paid in full, no later than 60 months following the Petition Date.

The Holders of Priority Tax Claims shall be limited to the Cash payment provided herein except to the extent they hold a general unsecured non-priority Class 2 Claim. The payment of the Priority Tax Claims in accordance with this Section shall be in full and final satisfaction, settlement, release and discharge of such Allowed Priority Tax Claim against the Debtor and the Estate. Thereafter, the Holders of such Allowed Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges or powers in respect of the Debtor, the Estate, or the Assets.

3.1.4 Priority Employee Claims

Priority Employee Claims entitled to priority pursuant to §507(a)(4) consists of allowed unsecured claims but only to the extent of $15,150 for each individual or corporation as the case may be, earned within 180 days before the Petition Date for wages, salaries or commissions, including vacation, severance and sick leave pay earned by an individual. Priority Employee Claims shall be paid, in full, over a period of 1 year from the Effective Date, to be paid on a monthly basis with the first payment due on the 1st date of the month following the Effective Date and on each 1st date of the month thereafter for a total of 12 payments. The Debtor is not aware of any Employee Claims.

3.2 Impaired Classes of Claims (Entitled to Vote on Plan)

3.2.1 Class 1 – Secured Claims

A summary of all secured creditor payments is attached to the Disclosure Statement as Exhibit E. All Allowed Secured Claims shall be reduced by the total amount of adequate protection payments made by the Debtor to the secured parties through the Effective Date.

(a) Class 1(a) – Allowed Secured Claim of Atlantic Union Equipment

Atlantic Union Equipment ("Atlantic") filed a claim in the amount of $724,234.85. However, the Debtor's books and records reflect that $688,325.00 is owed. The amount of $688,325.00 is fully secured (the "Allowed Atlantic Secured Claim") by liens on vehicles identified on the Debtor's Schedule A/B as Asset 47.11 and 47.25 (the "Atlantic Collateral"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order entered on August 18, 2026 [Dkt. 87], the Debtor is making adequate protection payments to Atlantic in the amount of $28,724.32 per month.

The Debtor shall pay the Atlantic Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Atlantic through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the estimated monthly payments to Atlantic Bank will be approximately $13,874.54.

Atlantic shall retain its liens on and security interest in the Atlantic Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of Atlantic at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the Atlantic Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Atlantic and the Debtor (the "Atlantic Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

Class 1(a) Claim is impaired and entitled to vote on the Plan.

(b) Class 1(b) - Secured Claim of BMO Bank NA

BMO Bank NA ("BMO") filed a claim in the amount of $360,590.09 which is fully secured (the "Allowed BMO Secured Claim") by liens on the vehicles identified on the Debtor's Schedule A/B as Assets No. 47.14 (the "BMO Collateral"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to an Order dated July 21, 2026 [Dkt. 69], the Debtor is making adequate protection payments to BMO in the amount of $4,800.00 per month for the retained collateral.

The Debtor shall pay the BMO Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to BMO through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based

on the above terms, the monthly payments to BMO will be approximately $7,268.40 per month.

BMO shall retain its liens on and security interest in the BMO Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of BMO at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the BMO Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between BMO and the Debtor (the "BMO Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

Class 1(b) is impaired and entitled to vote on the Plan.

(c) Class 1(c) – Secured Claim of Bank Midwest, a Division of NBH Bank

Bank Midwest, a division of NBH Bank ("Bank Midwest") asserts a claim in the amount of $811,824.41 which is fully secured (the "Allowed Bank Midwest Secured Claim") by collateral specified in the Debtor's Schedules as Asset No. 47.1 and 47.13 (the "Bank Midwest Collateral").

The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date.

The Debtor shall pay the Bank Midwest Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Bank Midwest through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Bank Midwest will be approximately $16,363.91 per month.

Bank Midwest shall retain its liens on and security interest in the retained Bank Midwest Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of Bank Midwest at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Bank Midwest Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Bank Midwest and the Debtor (the "Bank Midwest Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

Class 1(c) is impaired.

(d) Class 1(d) - Allowed Secured Claim of Bank of America NA

Bank of America NA ("Bank of America") filed a claim in the amount of $299,122.74

which is fully secured ("Allowed Bank of America Secured Claim") by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.2 and 47.12 (the "Bank of America Collateral"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated July 14, 2026 [Dkt. 57], the Debtor is paying adequate protection to Bank of America in the amount of $8,652.10 per month.

The Debtor shall pay the Bank of America Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Bank of America through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Bank of America will be approximately $4,618.42 per month.

Bank of America shall retain its liens on and security interest in the Bank of America Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of Bank of America at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Bank of America Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Bank of America and the Debtor (the "Bank of America Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

Class 1(d) is impaired.

(e) Class 1(e) – Daimler Truck Services USA LLC

Daimler Truck Services USA LLC ("DTFS") filed a claim in the amount of $5,668,461.53 (the "DTFS Claim") of which $4,654,665.29 relates to outstanding loans from DTFS to the Debtor. The remainder of the DTFS Claim is for loans made to related entities which were guaranteed by the Debtor. The DTFS Claim is secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.3 and 47.15 (the "DTFS Collateral"). The Debtor asserts that the DTFS Collateral has a value of $4,654,665.29 (the "Allowed DTFS Secured Claim").

The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated July 15, 2026 [Dkt. 60], the Debtor is paying adequate protection to DTFS in the amount of $120,000.00 per month.

The Debtor shall pay the Allowed DTFS Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to DTFS through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date.

Based on the above terms, the monthly payments to DTFS will be approximately $93,823.90 per month.

DTFS shall retain its liens on and security interest in the DTFS Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of DTFS at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining DTFS Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between DTFS and the Debtor (the "DTFS Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the DTFS Claim shall be treated and paid as a Class 2 general unsecured claim.

(f) Class 1(f) – Allowed Secured Claim of DeLage Landed Financial Services, Inc.

DeLage Landen Financial Services, Inc. ("DLL") filed a claim in the amount of $1,159,014.41 (the "DLL Claim"). The DLL Claim is secured by a lien on the vehicles identified on the Debtor's Schedules A/B as Asset No. 47.16 (the "DLL Collateral"). The Debtor asserts that the DLL Collateral has a value of $1,024,098.00 (the "Allowed DLL Secured Claim").

The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated September 1, 2026 [Dkt. 91], the Debtor is paying adequate protection to DLL in the amount of $14,152.56 per month.

The Debtor shall pay the Allowed DLL Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to DLL through the Effective Date) over a period of 60 months plus interest at 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to DLL will be approximately $20,642.70 per month.

DLL shall retain its liens on and security interest in the DLL Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of DLL at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining DLL Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between DLL and the Debtor (the "DLL Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the DLL Claim shall be treated and paid as a Class 2 general unsecured claim.

(g) Class 1(g) – Allowed Secured Claim of First Business Specialty

First Business Specialty is owed approximately $4,391.76 which is fully secured (the "Allowed First Business Secured Claim") by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.5 (the "First Business Collateral"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date.

The Debtor shall pay the First Business Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to First Business through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to First Business will be approximately $88.52 per month.

First Business shall retain its liens on and security interest in the First Business Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of First Business at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining First Business Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between First Business and the Debtor (the "First Business Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

Class 1(g) is impaired.

(h) Class 1(h) – Allowed Secured Claim of Horizon Bank

Horizon Bank ("Horizon") filed three claims in the aggregate amount of $404,759.12 (the "Horizon Claims"). The Horizon Claims are secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.6 (the "Horizon Collateral"). The Debtor asserts that the Horizon Collateral has a value of $320,000.00 (the "Allowed Horizon Secured Claim").

The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated August 18, 2026 [Dkt. 86], the Debtor is paying adequate protection to Horizon in the amount of $4,628.68 per month.

The Debtor shall pay the Horizon Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Horizon through the Effective Date) over

a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Horizon will be approximately $6,450.23 per month.

Horizon shall retain its liens on and security interest in the Horizon Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of Horizon at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Horizon Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Horizon and the Debtor (the "Horizon Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the Horizon Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(h) is impaired.

(i) Class 1(i) – Allowed Secured Claim of M&K National Lease

M&K National Lease ("M&K") is owed approximately $693,091.02 (the "M&K Claim"). The M&K Claim is secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.17 (the "M&K Collateral"). The Debtor asserts that M&K's collateral has a value of $620,000.00 (the "M&K Secured Claim"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date.

The Debtor shall pay the M&K Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to M&K through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to M&K will be approximately $12,497.32 per month.

M&K shall retain its liens on and security interest in the M&K Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of M&K at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining M&K Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between M&K and the Debtor (the "M&K Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the M&K Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(i) is impaired.

(j) Class 1(j) - Allowed Secured Claim of Mitsubishi Capital America, Inc.

Mitsubishi Capital America, Inc. ("Mitsubishi") filed a claim in the amount of $342,071.39 (the "Mitsubishi Claim"). The Mitsubishi Claim is secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.19 (the "Mitsubishi Collateral"). The Debtor asserts that the Mitsubishi Collateral has a value of $325,000.00 (the "Mitsubishi Secured Claim"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated July 21, 2026 [Dkt. 70], the Debtor is paying adequate protection to Mitsubishi in the amount of $5,000.00 per month.

The Debtor shall pay the Mitsubishi Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Mitsubishi through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Mitsubishi will be approximately $6,551.01 per month.

Mitsubishi shall retain its liens on and security interest in the Mitsubishi Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of Mitsubishi at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Mitsubishi Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Mitsubishi and the Debtor (the "Mitsubishi Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the Mitsubishi Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(j) is impaired.

(k) Class 1(k) – Allowed Secured Claim of Pathward NA

Pathward NA filed a claim in the amount of $1,542,367.74 (the "Pathward Claim"). However, the Debtor's books and records show that Pathward is owed a total of $1,521,774.67.

The Pathward Claim is secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset Nos. 47.8 and 47.20 (the "Pathward Collateral"). The Debtor asserts that the Pathward Collateral has a value of $1,030,000.00 (the "Pathward Secured Claim"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated August 18, 2026 [Dkt. 88], the Debtor is paying adequate protection to Pathward in the amount of $21,000.00 per month.

The Debtor shall pay the Pathward Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Pathward through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Pathward will be approximately $20,761.67 per month.

Pathward shall retain its liens on and security interest in the Pathward Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of Pathward at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Pathward Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Pathward and the Debtor (the "Pathward Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the Pathward Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(kl) is impaired.

(l) Class 1(l) – Allowed Secured Claim of PNC Bank

PNC Bank ("PNC") filed several claims against the Debtor (Claim Nos. 16, 17, 18, 19, 20, 21 and 22) in the aggregate amount of $1,745,009.32 (the "PNC Claims"). The Debtor maintains that the amount due to PNC is $1,668,593.04 in the aggregate. The PNC Claims are secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.9 and 47.21 (the "PNC Collateral"). The Debtor asserts that the PNC Collateral has a value of $1,400,000.00 (the "PNC Secured Claim"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated July 14, 2026 [Dkt. 58], the Debtor is paying adequate protection to PNC in the amount of $28,806.56 per month.

The Debtor shall pay the PNC Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to PNC through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based

on the above terms, the monthly payments to PNC will be approximately $28,219.74 per month.

PNC shall retain its liens on and security interest in the PNC Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of PNC at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining PNC Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between PNC and the Debtor (the "PNC Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the PNC Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(l) is impaired.

(m)Class 1(m) – Allowed Secured Claim of Siemens Financial Services, Inc.

Siemens Financial Services, Inc. ("Siemens") filed a claim in the amount of $421,687.84 (the "Siemens Claim"). The Siemens Claim is secured by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.22 (the "Siemens Collateral"). The Debtor asserts that the value of the Siemens Collateral is $300,000.00 (the "Siemens Secured Claim"). The Siemens Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor Siemens through the Effective Date. Pursuant to Order dated July 21, 2026 and located at Docket No. 67 (the "Siemens AP Order"), the Debtor has been ordered to pay adequate protection to Siemens in the amount of $6,131.00 per month beginning June 15, 2026.

The Debtor shall pay the Siemens Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to Siemens through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Siemens will be approximately $6,047.09 per month.

Siemens shall retain its liens on and security interests in the Siemens Collateral until its Siemens Secured Claim is paid in full. The Debtor may pre-pay the Siemens Secured Claim of Siemens at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Siemens Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Siemens and the Debtor (the "Siemens Loan Documents") and the Siemens AP Order shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the Siemens Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(m) is impaired.

(n) Class 1(n) – Allowed Secured Claim of Transportation Alliance Bank

Transportation Alliance Bank ("TAB") filed Claim No. 28 in the amount of $105,060.29 as fully secured (the "TAB Secured Claim") by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.10 and 47.23 (the "TAB Collateral"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date.

The Debtor shall pay the TAB Secured Claim in full (less the total amount of adequate protection payments made by the Debtor to TAB through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to TAB will be approximately $2,117.70 per month.

TAB shall retain its liens on and security interest in the TAB Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of TAB at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining TAB Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between TAB and the Debtor (the "TAB Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

The remainder of the TAB Claim shall be treated and paid as a Class 2 general unsecured claim.

Class 1(n) is impaired.

(o) Class 1(o) – Allowed Secured Claim of Volvo Financial Services

Volvo Financial Services ("Volvo") filed Claim No. 7 in the amount of $313,455.24 as fully secured (the "Volvo Secured Claim") by liens on the vehicles identified in the Debtor's Schedule A/B as Asset No. 47.14 (the "Volvo Collateral"). The Secured Claim shall be reduced by the total amount of adequate protection payments made to the Secured Creditor through the Effective Date. Pursuant to Order dated June 29, 2026 [Dkt. 41], the Debtor is paying adequate protection to PNC in the amount of $5,250.00 per month.

The Debtor shall pay the Volvo Secured Claim in full (less the total amount of adequate

protection payments made by the Debtor to Volvo through the Effective Date) over a period of 60 months plus 7.75% interest per annum. Payments shall be made on the 1st day of every month and shall commence on the 1st date of the month following the Effective Date. Based on the above terms, the monthly payments to Volvo will be approximately $6,318.30 per month.

Volvo shall retain its liens on and security interest in the Volvo Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of PNC at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the remaining Volvo Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Volvo and the Debtor (the "Volvo Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 10 days to cure any default under the Plan after written notice thereof of the alleged default.

Class 1(o) is impaired.

3.2.2 <u>Class 2 – General Unsecured Non-Priority Claims</u>

General Unsecured Non-Priority Claims aggregating approximately $5.3 Million, including deficiency claims of secured creditors, shall be paid pro rata from the General Unsecured Creditors Fund ("General Unsecured Creditor Fund" or "GUCF") which shall be funded by (a) $100,000 to be contributed by the Reorganized Debtor; and (b) $10,000 to be contributed by the principal Svetlana Randle.

Pro rata distributions of deferred cash payments, from the General Unsecured Creditors Fund will be disbursed on Distribution Dates. The Plan does not provide for any further distributions to the Class 2 claimants.

Class 2 is impaired and entitled to vote on the Plan.

3.3 <u>Impaired Classes of Interests</u> (Not Entitled to Vote on Plan)

<u>Class 3 – Equity Interests</u>

Holders of Equity Interests in the Debtor shall not retain their Claims and Interests. Equity Interests shall be deemed terminated and canceled upon the Effective Date. Newly issued equity interests of the Reorganized Debtor shall be issued and transferred 100% to Svetlana Randle as 100% Owner and President of the Reorganized Debtor upon the Effective Date. As new value for the equity interests in the Reorganized Debtor, Ms. Randle shall contribute toward the Plan payments the sum of $10,000, payable on the Effective Date into the General Unsecured Creditors Fund.

**ARTICLE IV**

**GENERAL PROVISIONS AND PROVISIONS FOR EXECUTION OF THE PLAN**

4.1 Amendments - The proponents of this Plan reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the confirmation date or as soon as practicable thereafter. After the Effective Date, the Debtor may, upon order of the Bankruptcy Court, in accordance with § 1127(b), of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of this Plan.

4.2 The Debtor's Plan provides for distribution to the holders of allowed claims and interests through funds obtained the continued operations of the Debtor's business. The Debtor projects that its cash flow will be sufficient to make the Plan payments. See, Cash Flow Projections and Claims Payment Schedule, a copy of which is attached to the Disclosure Statement as Exhibit C.

4.3 Refinance of Plan Debt – The Debtor shall be authorized to obtain financing of its operations or assets at any time after entry of the Confirmation Order and prior to the date for the last payment due to any class of claims under this Plan.

4.4 As of the Effective Date, and subject to the terms and conditions of the Plan, the Debtor shall be revested with all of its property, subject only to outstanding liens as provided by this Plan. The Debtor shall be entitled to manage its affairs without further order of this Court, subject only to the restrictions set forth in this Plan.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF THE PLAN AND NEW VALUE PROCEDURES**

4.5 Classes Entitled to Vote – Classes 1 and 2 are entitled to vote on the Plan.

4.6 Cram-down Confirmation of this Plan. The Debtor may request confirmation of the Plan, as it may be modified from time to time, under §1129(b) of the Bankruptcy Code with respect to any Class rejecting the Plan.

4.7 Auction Procedures for New Value. The New Value Contribution will be subject to higher and better offers. In exchange for consideration identified herein, a Bidder will be issued 100% of the membership interests of the post confirmation Debtor (the "Reorganized Debtor"), which shall be issued on the Effective Date. All Bidders will have an opportunity to bid for 100% of the membership interests in the Reorganized Debtor upon the same terms and conditions as set forth in this Plan as specified below. The membership interests will only be sold in one block of 100% membership interests. Creditors will not be permitted to bid their claims as part of the purchase price.

To become qualified bidders for 100% membership interests in the Reorganized Debtor, bidders will be required to serve written notice of their intention to bid on counsel to the Debtor and the U.S. Trustee (the "Notice Parties"), which notice shall contain the bidder's name, address, the terms of the bid and a verified statement that if the bid is accepted, the bidder will agree to abide by the terms of the sale as described above and perform the obligations of the Plan. The written notice must be accompanied by an earnest money deposit in the amount of $5,000.00 in the form

of cashier's or certified check plus proof of funds for the balance of the purchase price and must be received by Debtor's counsel on or before the last day to file ballots accepting or rejecting the Plan. The failure to provide written notice within the time provided will conclusively be deemed a waiver of the opportunity to purchase the membership interests in the Reorganized Debtor. In the event that there are competing qualified bids for 100% of the stock in the Reorganized Debtor, the Court will hold an auction at the Confirmation Hearing. Competing bids will be offered at increments of $1,000. The successful bidder shall then be awarded 100% membership interests of the stock in Reorganized Debtor. Payment for the membership interests will be due on the fifteenth day after the Effective Date of the Plan and shall be tendered to Debtor's counsel. In the event that the successful bidder fails to make the required payment, then the bid will be deemed withdrawn, the earnest money will be deemed forfeited to the Debtor, and the membership interests will be awarded to the next highest bidder.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

4.8 Distributions for Claims or Interests Allowed as of the Effective Date - Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the day prior to the Effective Date or as soon thereafter as is practicable. Any distribution to be made on or before the Effective Date pursuant to this Plan shall be deemed as having been made on the day prior to the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

4.9 Interest on Claims - Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post petition interest shall not accrue or be paid on any Claims, and no Holder of any other Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

4.10 Fractions of Dollars - Any other provision of this Plan, notwithstanding the Debtor, shall not need to distribute funds to any holder of an Allowed Claim when the distribution total is less than five dollars ($5.00).

4.11 Delivery of Distributions in General - Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtor's records unless proofs of claim or transfers of claim timely filed pursuant to the Bankruptcy Rules changes, modifies and/or replaces such addresses.

4.12 Undeliverable and Unclaimed Distributions - Any funds distributed to the Holders of Allowed Claims that remain unclaimed by such claimants for three (3) months after disbursement will be deposited with the Bankruptcy Court.

4.13 Compliance with Tax Requirements - Any federal, state or local withholding taxes or amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All entities holding Claims shall be required to provide any information necessary to

affect the withholding of such taxes.

4.14 Allocation of Plan Distributions Between Principal and Interest - To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of principal indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the claim, to the portion of such Claim representing accrued but unpaid interest.

4.15 Means of Cash Payment - Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Debtor, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Debtor.

4.16 Setoffs - The Debtor may, pursuant to §553 of the Bankruptcy Code or applicable non bankruptcy laws, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim or Litigation Claim that the Debtor may have against the Holder of such Claim, provided however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Litigation Claim that it may have against such Holder.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 Executory Contracts and Unexpired Leases

7.1.1 The Debtor shall assume the following contracts:

(a) All insurance policies currently in place;
(b) Any and all fuel contracts;
(c) Any and all payroll services contracts;
(d) Lease for Debtor’s trucks and trailers with Bigman, Inc.;
(e) Lease for Debtor’s trucks and trailers with Front Lane Transport, Inc.;
(f) Lease for Debtor’s trucks and trailers with West Coast Cargo; and
(g) Lease for Debtor’s trucks and trailers with Westfield Express Corp

as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. All other contracts which are executory, in whole or in part, and which was originally executed prior to the filing of the Chapter 11 Petition, and to which the Debtor is a party, and has not been assumed, assigned, rejected or terminated during the pendency of the Chapter 11 proceedings or pursuant to the provisions of the Plan, shall be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND LITIGATION CLAIMS

8.1 Objection Deadline, Prosecution of Objections – Objections to the allowance of claims will be filed with the Court on or before sixty (60) days after the Effective Date. The Debtor shall be authorized to, and shall, resolve all Disputed Claims or Disputed Interests by withdrawing or settling such objections thereto, or by litigating to judgment (in the Bankruptcy Court or such other court having jurisdiction) as to the validity, nature and/or amount thereof. Objections to the allowance of claims filed on or after the Confirmation Date will be filed with the Court on or before ninety (90) days after the filing of such claim. Notwithstanding the foregoing, any claim filed after the Claims Bar Date shall be disallowed and forever barred.

8.2 No Distributions Pending Objection - If any such objection is pending on any Distribution Date, then no distribution shall be made to such claimant until entry of a final and non-appealable Order resolving the claim objection and determining the validity and amount of such claim or interest. If any claim objection is pending on any Distribution Date, the Debtor shall continue to hold, for the claimants asserting such disputed claims, the amount that would be required to be disbursed thereto within the provisions of this Plan, as if each disputed claim were to be allowed in full. After entry of an Order allowing, in whole or in part, a claim which has been the subject of an objection, the Debtor shall disburse, not more than thirty (30) days following the entry of the Order allowing the claim, to the holder of such allowed claim the appropriate pro rata dividend withheld. Objections not filed within the time periods set forth herein shall be deemed waived and shall be forever barred.

8.3 Contingent and Unliquidated Claims - If any allowed claim contains a contingent and unliquidated amount, then no distribution shall be made to such claimant subject to the following. If any such claim exists on any Distribution Date, the Debtor shall continue to hold, for the claimants asserting such contingent and unliquidated claim, the entire amount of the liquidated, contingent and unliquidated claim that would be required to be disbursed thereto within the provisions of this Plan, as if each contingent and unliquidated claim were to be allowed in full and until a "Final Claim" is filed. The Debtor shall disburse not more than thirty (30) days following the filing of such Final Claim" to the holder of such allowed claim the appropriate pro rata dividend withheld. Any "Final Claim" shall be filed no later than one (1) year from the Effective Date of the Plan or such contingent and unliquidated amounts of a claim shall be disallowed and forever barred.

8.4 Litigation Claims -

The Debtor is unaware of any Litigation Claims and does not intend to initiate any Litigation Claims other than objections to certain Claims by the deadline set forth above.

## ARTICLE IX
## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1 Conditions to Confirmation - The Debtor will not seek entry of the Confirmation Order unless and until the Confirmation Order is reasonably acceptable in form and substance to the

Debtor.

9.2 Conditions to Effective Date - As a condition precedent to the occurrence of the Effective Date, the Confirmation Order confirming the Plan, as such Plan may have been modified, shall be in full force and effect and shall not have been vacated, modified or stayed, and if it is the subject of an appeal or reconsideration, no stay of the Confirmation Order shall be in effect.

9.3 Upon the Effective Date, the Debtor shall serve all creditors with notice of the Effective Date.

9.4 Secured Claims Retention of Liens – To the extent allowed, holders of allowed secured claims shall receive fair and equitable treatment with respect to each allowed secured claim provided for by the Plan, as follows: (a) either the holder of such claim has accepted the Plan, and shall receive the treatment specified herein; or (b) the holder of such claim retains the lien securing such claim and the value, as of the Effective Date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claim; or, (c) the Debtor has surrendered the property securing such claim to such holder.

9.5 Completion and Consummation of Plan – The Plan shall complete and be consummated upon payment of the first Distributions required by the Plan; and upon consummation the Reorganized Debtor may seek to close the Chapter 11 case.

## ARTICLE X
## EFFECT OF PLAN CONFIRMATION

10.1 Binding Effect – The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns.

10.2 Litigation Claims - Vesting of Causes of Action - Pursuant to 11 U.S.C. §1123(b), the Debtor shall be vested with the right to prosecute all claims, demands, rights and causes of action that the Debtor or the Debtor's Estate may hold against any Person or Entity.

10.3 Term of Bankruptcy Injunction or Stays - All injunctions or stays provided for in the Bankruptcy Case under §§105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.4 Plan Injunction – The Plan and the Confirmation Order shall include, among other things, for a Plan Injunction that provides that from and after the Confirmation Date all entities and persons who have held, hold or may hold Claims against or Interests in the Debtor who had or were sent notice of these confirmation proceedings, their respective successors or assigns thereto, or anyone claiming under or through such holders are (i) **permanently enjoined from taking any of the following actions against the estate, property of the estate or the Debtor on account of any such claims or interests and (ii) preliminarily enjoined from taking any of the following actions against the estate, property of the estate or the Debtor on account of such claims or interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment,**

**award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; (E) filing, serving or asserting any notice of termination, nonrenewal or other cessation of any contract, lease, franchise or other agreement based on any act, occurrence, event or combination thereof occurring in whole or part prior to the Effective Date; and (F) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such entities and persons from exercising their rights pursuant to and consistent with the terms of the Plan**. **The Plan Injunction in this paragraph is a §1141 discharge.** The Court shall have jurisdiction to determine and award damages to the Reorganized Debtor for any violation of such injunction including compensatory damages, professional fees and expenses and exemplary damages for any willful violation of said injunction, provided a copy of this injunction has been served on any party sought to be held in contempt of it.

10.5 Discharge - Except as otherwise provided in the Plan or in the Confirmation Order, the Confirmation Order acts as a discharge, effective as of the Confirmation Date, of any and all claims, obligations and debts of the Debtor which arose prior to the Confirmation Date, pursuant to 11 U.S.C. §1141(d)(1). The Debtor's discharge shall be given full force and effect pursuant to 11 U.S.C. §524.

10.6 Any judgment heretofore or hereafter obtained in any court other than the United States Bankruptcy Court, for the Northern District of Illinois, Eastern Division, is null and void as a determination of the personal liability of the Debtor with respect to the following:

(a) debts dischargeable under 11 U.S.C. §523;

(b) unless heretofore or hereafter determined by order of this Court to be non-dischargeable, debts alleged to excepted from discharge under subsections (2), (4) and (6) of 11 U.S.C. §523(a); and,

(c) debts determined by the Court to be discharged.

## ARTICLE XI RETENTION OF JURISDICTION

Pursuant to §§105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or interests;

(b) Resolve any matters related to the rejection of any executory contract or

unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(c) Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(d) Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on or after the Effective Date;

(e) Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f) Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(g) Upon motion and notice and for good cause shown, the Court may modify the Plan before or after the Effective Date pursuant to §1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order and/or contract, instrument, release or other agreement or document created in connection with the Plan, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, if permitted by Court order;

(h) Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan.

(i) Issue injunctions, enter and implement other orders or take such other actions as shall be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan, the Confirmation Order or the Plan Injunction;

(j) Hear and determine Litigation Claims, if any.

(k) Hear and determine matters concerning state, local and federal taxes in accordance with §§346, 505 and 1146 of the Bankruptcy Code;

(l) Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

(m) Determine any other matters that may arise in connection with or relate to the

Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n) Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

(o) Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(p) Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and,

(q) Enter an order closing the Bankruptcy Case.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

12.1 Effectuating Documents and Further Transactions - The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan. The Debtor, via Mr. Lukov, shall be responsible for all post-confirmation reporting until the case is closed.

12.2 Bar Dates for Administrative Claims - The Bar Date for filing Administrative Claims (not including Fee Claims and not including Tax Claims) is sixty (60) days after the Effective Date. Holders of asserted Administrative Claims that are subject to the Administrative Claims Bar Date shall submit requests for payment on or before such Administrative Claims Bar Date or forever be barred from doing so.

12.3 Payment of Statutory Fees - All fees payable pursuant to §1930 of title 28 United States Code shall be paid by the Debtor as and when they become due, until the Bankruptcy Case is closed.

12.4 Amendment or Modification of the Plan - Subject to §1127 of the Bankruptcy Code, the Debtor reserves the right, to alter, amend or modify the Plan, upon motion and notice and for good cause shown, at any time prior to or after the Confirmation Date, but prior to the substantial consummation of the Plan. A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

12.5 Severability of Plan Provisions - If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the

original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6 Successors and Assigns - The Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

12.7 Revocation, Withdrawal or Non-Consummation – The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation of the Plan does not occur, then, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.8 Notice - All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtor:

Trans Express Lines, Inc.
5522 Clarendon Hills Road
Clarendon Hills, IL 60514

and

Miriam Stein Granek, Esq.
Gutnicki LLP
4711 Golf Road, Suite 200
Skokie, IL 60077
mgranek@gutnicki.com

David Freydin
Law Offices of David Freydin

8707 Skokie Blvd, Suite 312
Skokie, IL 60077

12.9 Governing Law - Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan Document, exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to any principles of conflicts of law of such jurisdiction.

12.10 Tax Reporting and Compliance – In connection with the Plan and all instruments issued in connection therewith and distributions thereof, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor is hereby authorized to request an expedited determination under §505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.11 Schedules - All exhibits and schedules to the Plan are incorporated and are a part of the Plan as if set forth in full herein.

This Plan of Reorganization has been respectfully submitted on this 14th day of September 2026 by the Debtor.

Respectfully submitted:

TRANS EXPRESS LINES, INC.

By: ____________________________
Svetlana Randle, President

By: /s/ Miriam Stein Granek
Attorney for Debtor

Miriam Stein Granek (6238163)
Gutnicki LLP
4711 Golf Road, Suite 200
Skokie, IL 60077
(847) 745-6592
mgranek@gutnicki.com

And

David Freydin
Law Offices of David Freydin
8707 Skokie Blvd. Suite 312
Skokie, IL 60077
David.freydin@freydinlaw.com